**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| M.M., | : | |
| Petitioner, | : | |
| v. | : | Case No. 4:26-cv-107-CDL-AGH<br>28 U.S.C. § 2241 |
| Warden, STEWART DETENTION CENTER, *et al.*, | : | |
| Respondents. | : | |

## ORDER AND RECOMMENDATION

Petitioner filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1) on January 21, 2026. Respondents moved to dismiss on February 11, 2026 (ECF No. 4).[1] For the reasons explained below, it is recommended that Respondents' motion to dismiss (ECF No. 4) be denied and Petitioner's application for habeas relief be granted.

## BACKGROUND

Petitioner is a citizen of Eritrea.[2] Atkinson Decl. ¶ 3, ECF No. 4-1; Pet. ¶ 4, ECF No. 1. He originally entered the United States as an infant in 1981 with family.

[1] Respondents filed a status (ECF No. 9) on April 8, 2026, which Petitioner moved to strike largely as containing hearsay or information not within the declarant's personal knowledge (ECF No. 13). Petitioner's motion to strike is denied, although the Court does note Petitioner's objection to the information contained in Supervisory Detention and Deportation Officer Stephens' declaration filed at ECF No. 9-1.

[2] Respondents state that Petitioner is a native of Saudi Arabia. Resp'ts' MTD 1, ECF No. 4; Atkinson Decl. ¶3. Petitioner states that he is a national of Eritrea. Pet. ¶ 4. Respondents do not contend that they are attempting to remove Petitioner to Saudi Arabia, so this factual disagreement is irrelevant for purposes of this Recommendation.

Pet. ¶¶ 4, 11. In 2001, Petitioner obtained status as a lawful permanent resident through his mother, who naturalized in 1990. Atkinson Decl. Ex. A, at 2, ECF No. 4-2.

In 2008, Petitioner was convicted of two counts of armed robbery and one count of possession of a firearm during the commission of a felony in the Superior Court of Fulton County, Georgia.[3] *Id.* Ex. B, ECF No. 4-3. Petitioner was sentenced to ten years of confinement. *Id.* at 1. Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO) encountered Petitioner on April 4, 2013, while he was serving his criminal sentence in Georgia Department of Corrections custody. *Id.* Ex. A, at 2. ICE/ERO issued a Notice to Appear charging Petitioner with two charges of inadmissibility under the Immigration and Nationality Act (INA). Atkinson Decl. Ex. C, ECF No. 4-4. On March 6, 2014, an immigration judge sustained the charges in the NTA and ordered Petitioner removed to Eritrea or alternatively to Saudi Arabia. *Id.* Ex. D, ECF No. 4-5. The parties waived appeal, so the removal order became final that day. 8 C.F.R. § 1241.1(b).

Petitioner entered immigration custody on October 22, 2018, after completing his prison sentence. Atkinson Decl. ¶ 11; Pet'r's Resp. MTD 1, ECF No. 8. ICE/ERO

[3] Respondents also state that Petitioner has a conviction for possession of a controlled substance from 2012. Resp'ts' MTD 1; Atkinson Decl. ¶ 6. The records attached to the declaration of Deportation Officer Atkinson do not support this statement. The Form I-213 from 2013 states that Petitioner was arrested for possession of a controlled substance in 2012, but that there is "no disposition" from that offense. Atkinson Decl. Ex. A, at 3. The Form I-213 from 2025 has the same disposition listed for the arrest from 2012—"no disposition". Atkinson Decl. Ex. E, at 3, ECF No. 4-6. Petitioner does not confirm or deny in his filings if he has this additional conviction. *See, e.g.,* Pet'r's Resp. MTD 1, ECF No. 8 (admitting that Petitioner entered immigration custody after serving his "sentence for armed robbery and possession of a firearm during the commission of a felony[]"). It is thus unclear to the Court from the record whether Petitioner has this additional conviction.

released him on an order of supervision on June 10, 2019. Atkinson Decl. ¶ 12; Pet'r's Resp. MTD 1-2. ICE/ERO revoked Petitioner's supervision on July 2, 2025, and brought him back into custody. Atkinson Decl. ¶¶13-14 & Ex. F, ECF No. 4-7.

On July 18, 2025, ICE/ERO submitted a travel document request to ERO headquarters. Atkinson Decl. ¶ 15. After obtaining additional information, ERO submitted the travel document request on September 29, 2025. *Id.* ¶ 16. In January 2026, ERO began engaging to obtain assistance in getting a travel document. *Id.* ¶ 17. Since that time, ERO has continued to work with the Eritrean government in an attempt to obtain a travel document for Petitioner. Stephens Decl. ¶¶ 3-6, ECF No. 9-1; Horrach Decl. ¶¶ 5-6, ECF No. 14-1; Guerra Decl. ¶¶ 3-8, ECF No. 16-1. At one point, the Eritrean Embassy verbally informed ERO that it was going to issue a travel document for Petitioner, but the travel document has still not been issued despite repeated contact with the Eritrean government and Embassy. Stephens Decl. ¶¶ 3-6; Horrach Decl. ¶¶ 5-6; Guerra Decl. ¶¶ 3-8. As of July 30, 2026, ERO headquarters confirmed that a travel document had not been issued. Guerra Decl. ¶ 8.

Petitioner filed his application for habeas relief on January 21, 2026, seeking relief under *Zadvydas v. Davis*, 533 U.S. 678 (2001), because he is subject to a final order of removal and has been held in detention for over six months. Pet. ¶¶ 10-26. Respondents moved to dismiss claiming that his removal to Eritrea was likely in the reasonably foreseeable future. Resp'ts' MTD 4-8, ECF No. 4. Petitioner's application for habeas relief and Respondents' motion to dismiss are thus ripe for adjudication.

## DISCUSSION

Petitioner claims that he is entitled to release under *Zadvydas* because he has been detained longer than the presumptively reasonable six-month period and his removal is not likely in the reasonably foreseeable future. Pet. ¶¶ 10-26. As discussed below, the Court agrees. Petitioner's application for habeas relief should consequently be granted on this ground.

### I. Legal Framework for Post-Final Order of Removal Detention

Because Petitioner has a final order of removal, Petitioner's detention is governed by 8 U.S.C. § 1231(a). Under § 1231(a), "when an alien is ordered removed," the Attorney General "shall" remove the alien within ninety days. 8 U.S.C. § 1231(a)(1)(A). This removal period begins to run on, as relevant here, "the date the order of removal becomes administratively final," or "[i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B)(i), (iii). Detention during the ninety-day removal period is mandatory. 8 U.S.C. § 1231(a)(2). The removal period shall be extended "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). Finally, inadmissible aliens, criminal aliens, and those who pose a risk to the community or of non-compliance with a removal order "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in [§ 1231(a)(3)]." 8 U.S.C. § 1231(a)(6).

Section 1231(a)(6) does not limit the length of post-final order detention. In *Zadvydas*, however, the United States Supreme Court applied the doctrine of constitutional avoidance to "read an implicit limitation into the statute." 533 U.S. at 689. The Supreme Court held that § 1231(a)(6) authorizes post-removal-order detention only for a period "reasonably necessary" to accomplish the alien's removal from the United States. *Id.* at 699-700. The Court recognized six months as a presumptively reasonable period of time to allow the government to accomplish such removal. *Id.* at 701.

The Eleventh Circuit subsequently explained that in order "[t]o state a claim under *Zadvydas* . . . an alien must show that: (1) he has been detained for more than six months following the final order of removal and (2) there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Vaz v. Skinner*, 634 F. App'x 778, 782 (11th Cir. 2015) (citing *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("[I]n order to state a claim under Zadvydas the alien . . . must show post-removal order detention in excess of six months [and] also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.")).

## II. Petitioner is Entitled to Release Under *Zadvydas*

As explained above, a claim under *Zadvydas* typically requires two showings: (1) post-final order detention longer than six months; and (2) no significant likelihood of removal in the reasonably foreseeable future. *Akinwale*, 287 F.3d at 1052. Petitioner came into immigration custody on July 2, 2025. Atkinson Decl. ¶ 13.

Petitioner filed his application for habeas relief on January 21, 2026, beyond the six-month presumptively reasonable period under *Zadvydas*. There is consequently no dispute that the first element of Petitioner's claim has been met.

The second *Zadvydas* prong requires a petitioner to show "there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Vaz*, 634 F. App'x at 782. This showing has also been met. Petitioner states that he has cooperated in all efforts to obtain a travel document, but, despite this cooperation, ICE has been unable to obtain a travel document for him. Pet. 2, 4. Further, he claims that ICE continued in its efforts to obtain a travel document while he was on an OSUP, but was unsuccessful for almost seven years. Pet'r's Resp. MTD 3. Petitioner alleges that the lack of a travel document is due to travel sanctions and the bad relationship between the United States and Eritrea. Pet. 4. In support of this statement, Petitioner points to Presidential Proclamation 10949 of June 4, 2025, in which President Trump found Eritrea to be a "Country of Identified Concern" due to multiple issues with Eritrea including the fact that "Eritrea has historically refused to accept back its removable nationals." Pet'r's Resp. MTD at 3-4 (citing 90 Fed. Reg. 24497, 24500 (June 4, 2025)). Based on the concerns outlined in the proclamation, "[t]he entry into the United States of nationals of Eritrea as immigrants and nonimmigrants [was] fully suspended." 90 Fed. Reg. 24497, 24500.[4] The Court finds that the combination of this information—

[4] Presidential Proclamation 10949 was later amended by Presidential Proclamation 10998 (Dec. 16, 2025), 90 Fed. Reg. 59717. Presidential Proclamation 10998 did not change the status of Eritrea as described in Proclamation 10949. *See* 90 Fed Reg. 59717, 59722 (continuing full suspension of entry for nationals of Eritrea).

Petitioner's continued compliance with attempts at getting a travel document, a statement from the President of the United States that Eritrea is recalcitrant in repatriating its nationals, and the lack of obtaining a travel document for Petitioner in over a year of his current detention—is sufficient for Petitioner to meet his burden.

Respondents submit in response that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future because ICE/ERO removed twenty-one people to Eritrea last year and because it is seeking a travel document for Petitioner. Resp'ts' MTD 6-8; Atkinson Decl. ¶ 19. In April 2026, ICE/ERO represented that Petitioner's travel document had been approved and that ERO was "coordinating with the Eritrean Embassy on a convenient date to pick up Petitioner's travel document." Stephens Decl. ¶ 6. ERO has since come off that assertion: "On July 30, 2026, ERO HQ responded that the travel document had not been issued, but that contact had been made with an Embassy official regarding Petitioner." Guerra Decl. ¶ 8.

*Zadvydas* states that "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government *must* respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701 (emphasis supplied). Respondents have failed to do that here. Instead, they argue that submitting travel document requests to a known recalcitrant country constitutes evidence to establish removal in the reasonably foreseeable future. The Supreme Court in *Zadvydas* specifically cautioned against such arguments:

> The Fifth Circuit held Zadvydas' continued detention lawful as long as "good faith efforts to effectuate . . . deportation continue" and Zadvydas failed to show that deportation will prove "impossible." But this standard would seem to require an alien seeking release to show the absence of any prospect of removal—no matter how unlikely or unforeseeable—which demands more than our reading of the statute can bear.

*Zadvydas*, 503 U.S. at 702 (internal citation omitted). In other words, a mere showing of continued good faith efforts to effectuate removal, without more, is insufficient to meet Respondents' burden. "And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely . . . shrink[s]." *Id.* at 701. Thus, under the facts of this case, Respondents have failed to meet their burden and Petitioner's application for habeas relief should be granted as to his *Zadvydas* claims.

**CONCLUSION**

For the foregoing reasons, it is recommended that Petitioner's application for habeas relief (ECF No. 1) be **GRANTED** and Respondents' motion to dismiss (ECF No. 4) be **DENIED**. Petitioner's motion to strike (ECF No. 13) is **DENIED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof. The district judge shall make a *de novo* determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations

contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO ORDERED and RECOMMENDED**, this 10th day of August, 2026.

s/ *Amelia G. Helmick*
UNITED STATES MAGISTRATE JUDGE